## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CHRISTIAN CARE MINISTRY, INC., a
Florida Not For Profit Corporation,

          Plaintiff,

v.

SURECO INSURANCE AGENCY, INC., a
California corporation;  SURECO HEALTH
AND LIFE INSURANCE AGENCY, INC., a
California corporation;  SURECARE, INC., a
California Corporation**;** and JOHN DOES 1 –
10,

          Defendants.

Civil Action No.: 6:18-CV-1313-ORL-37-GJK

## FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Christian Care Ministry, Inc., by its attorneys, Latham, Shuker, Eden & Beaudine, LLP[1], alleges as follows for its Complaint against Defendants SureCo Insurance Agency, Inc., SureCo Health and Life Insurance Agency, Inc., SureCare, Inc., and John Does 1 - 10 (collectively "Defendants"):

## I.  PARTIES, JURISDICTION AND VENUE

1.  Plaintiff Christian Care Ministry ("Plaintiff" or "CCM") is a Florida Not For Profit Corporation with its principal place of business at 4150 W. Eau Gallie Blvd., Melbourne, Florida 32934.

---

[1] Plaintiff is also represented by out-of-state counsel, Sherman & Howard L.L.C, located in Colorado.  Out-of-state counsel intends to seek an order from this Court to appear *pro hac vice*.

2.      Defendant SureCo Insurance Agency, Inc ("SureCo Insurance"), is a California corporation with its principal place of business at 201 East Sandpointe Ave., Suite 600, Santa Ana, California 92618.

3.      Defendant SureCo Health and Life Insurance Agency, Inc. ("SureCo Health"), is a California corporation with its principal place of business at 201 East Sandpointe Ave., Suite 600, Santa Ana, California 92618.

4.      Defendant SureCare, Inc. ("SureCare"), is a California corporation with its principal place of business at 201 East Sandpointe Ave., Suite 600, Santa Ana, California 92618.

5.      Defendants John Does 1 - 10 are persons and entities whose identities are not presently known and, therefore, Plaintiff sues such Defendants by fictitious names.  Plaintiff will seek leave of Court to amend this Complaint to allege their true names and capacities when they have been ascertained.

6.      Throughout this Complaint, all Defendants, including SureCo Insurance, SureCo Health, SureCare, and John Does 1 - 10, are sometimes referred to collectively as the "Defendants."

7.      At all times herein mentioned, and upon information and belief, all Defendants, including SureCo Insurance, SureCo Health, SureCare, and John Does 1 - 10, were the agents, representatives, servants, or employees of their co-defendants, and/or materially aided, abetted, or encouraged each other's conduct described herein, and in doing the things hereinafter alleged, were acting within the course and scope of their authority as those agents, representatives, servants, or employees and with the permission and consent of their co-Defendants.

8.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).  All other claims in this action arise from the same transaction or occurrence, such that this Court has supplemental jurisdiction under 28 U.S.C. § 1391(b).

9.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b).

## II.  GENERAL ALLEGATIONS

*A*.     ***Brief Overview and History of Christian Care Ministry and Its Medi-Share Program***

10.     According to the Acts of the Apostles, the early followers of the teachings of Christ "were one in heart and mind.  No one claimed that any of their possessions was their own, but they shared everything they had. . . . And God's grace was so powerfully at work in them all that there was no needy persons among them."  Acts 4:32-35.

11.     Christian Care Ministry was formed as a healthcare sharing ministry to apply the Christian teachings of coming together to care for each other and carry each other's burdens to the modern-day world of healthcare affordability.  In 1993, CCM developed its MEDI-SHARE® program, which is a community of Christians who have agreed to live as the early church when it comes to sharing each other's healthcare burdens.

12.     MEDI-SHARE® is not an insurance program; rather it is a nationwide network of individuals who pay a monthly share into the MEDI-SHARE® program, which share amount is then used to pay another member's eligible medical bills.  MEDI-SHARE® provides its members an alternative to insurance that both helps pay for their medical expenses and avoids paying for procedures that may go against their Christian beliefs.

13.     As members of a qualifying healthcare sharing ministry, MEDI-SHARE® members are exempt from the individual mandate (which was repealed in 2018) of the Affordable Care Act.

14.     Over its 25 year history, more than $2.6 billion in MEDI-SHARE® member medical bills have been shared and discounted.  CCM's MEDI-SHARE® program has grown substantially and currently serves more than 400,000 members throughout the United States.

15.     Given the success and popularity of its program, CCM applied for Federal trademark registration of its MEDI-SHARE® mark with the USPTO on December 1, 1994, and was granted registration (Reg. No. 2,388,941) for the mark MEDI-SHARE® on September 26, 2000.  A copy of the MEDI-SHARE® is attached as Exhibit 1.

16.     CCM's Declaration of Use and Incontestability was acknowledged and accepted by the USPTO on January 5, 2006.   A copy of the Notice of Acceptance and Acknowledgement is attached as Exhibit 2.

17.     CCM is still the owner of the MEDI-SHARE® mark and has continuously used the mark in commerce since 1993.

18.     One of the many ways CCM uses the MEDI-SHARE® mark is on its websites, including www.mychristiancare.org and www.medishare.com.  Below are examples of how CCM uses its MEDI-SHARE® mark:





19.     Along with its registered mark MEDI-SHARE®, CCM has also consistently used a stylized cross in its logos, including:





20.   CCM's advertising material also makes clear that its mission and services are directed towards individuals with a commitment to the Christian faith who are looking for a healthcare option that allows them to incorporate their faith in addressing their own healthcare needs and the healthcare needs of others.  This message is conveyed throughout CCM's marketing materials, including the following examples:



Sharing Lives, Faith, Talents and Resources

*For thousands of years, Christians have come together to care for each other and carry each other's burdens.*

In 1993, a formalized approach to sharing healthcare burdens began with the **Medi-Share** program. From small beginnings, this big idea took root.

Over 24 years later, the Medi-Share program serves more than 400,000 members, and more than $2.6 billion dollars in medical bills have been shared and discounted.

WHAT IS CCM?

*A Movement Whose Roots Are Found In the Early Church*

ACTS 2   ACTS 4

## What Is Medi-Share?

MEDI-SHARE IS...



**A NEW TESTAMENT WAY OF THINKING**

Medi-Share is a community of Christians who have agreed to live as the early church (Acts 2 & 4) when it comes to sharing each other's burdens. Members share each other's eligible medical bills and, most importantly, encourage and lift one another up in prayer. It's a *Biblical* way, to take care of your healthcare. A way that focuses on people, NOT profit. A way that inspires you to live a healthier life so you can fulfill the plan that God has for you.

**THE BEST KEPT SECRET**

Medi-Share began in 1993 and members have shared and discounted more than $2 Billion in medical bills. Members select an annual household portion, which is the amount they are responsible for before eligible bills will be approved for sharing. Once approved, bills can be eligible for sharing at 100%. Not 80/20 or 70/30.



## Why Medi-Share?

**A GOD HONORING CHOICE**

As a Christian healthcare sharing community, Medi-Share offers affordable options that average about half the cost of other healthcare programs. There are seven monthly share options to fit any budget. Best of all, your healthcare dollars go to help other Christians rather than funding medical choices that are not God-honoring.

**B.**     ***Defendants' Unauthorized and Unlawful Use of the MEDI-SHARE® Mark and to Profit From CCM's Goodwill and Reputation***

21.     SureCo Insurance was formed in California in 2011. According to its website www.sureco.com, the insurance products it provides include general liability, worker's compensation, management liability, employment practices liability insurance, commercial auto, cyber, bonds, and group benefits.

7

22.     SureCo Health was formed in California in 2016.   According to its website www.surecohealth.com, it provides individual health insurance plans.

23.     SureCo Insurance and SureCo Health are related entities.   Both entities have the same corporate officers and directors (Matthew Kim, Matthew Christopherson, and Marc Bablot) and the same corporate address.   Additionally, the Terms and Conditions page for the SureCo Insurance website refers to and links to the website for SureCo Health, as shown below:



24.     In October 2017, CCM discovered the website www.medi-shareplans.com after receiving complaints from customers who thought they were calling CCM but during the phone call realized that they were in fact talking to a different entity.

25.     The medi-shareplans.com website used a confusingly similar mark to the MEDI-SHARE® mark.   Below are several screen shots of the www.medi-shareplans.com website:

 





26.     The bottom left-hand corner of the screenshot above indicates that the website is controlled and managed by SureCo, Inc.

27.     Plaintiff has been unable to locate a separate entity called SureCo, Inc.  Plaintiff presumes the Defendants use the name SureCo, Inc. as short hand or a d/b/a for their various related entities.

28.     The medi-shareplans.com website and associated logo are confusingly similar to the marks owned by CCM.  As shown below, CCM's logo is shown on the left and Defendant's

logo is shown on the right.  Both use the MEDI-SHARE® mark and both use a similar looking stylized cross.



**C.**     ***CCM's Efforts To Stop Defendants' Infringing Use and Discovery of Additional Infringing Websites and Related Entities.***

29.     After discovering the website, CCM, through counsel, sent a Cease and Desist letter to SureCo, Inc.  A copy of CCM's October 24, 2017 Letter is attached as <u>Exhibit 3</u>.

30.     SureCo, Inc. responded to the Cease and Desist letter though counsel, and at some point after receiving the letter SureCo., Inc. removed all references to Medishare or the Medishare marketplace from the medi-shareplans.com website.

31.     While there was a brief reprieve in customer complaints regarding the confusingly similar use of the MEDI-SHARE® mark, CCM continued to receive complaints even after the www.medi-shareplans.com website removed all references to the mark.

32.     However, these new customer complaints were about a new website – www.medishareplan.com.  In several instances, individuals believing at the time that they were talking with CCM purchased plans through the medishareplan.com website only to learn later that the entity they sent their money to was not CCM.

33.     The medishareplan.com website is strikingly similar to the medi-shareplans.com website, including a slightly altered version of a stylized cross and the same 800 number for potential customers to call, as shown below:







34.     While similar, the medishareplan.com website is even more confusing because it contains additional information about its health sharing products, including specific references to offering plans to "those of the Christian faith", as shown below:

**What are Medical Sharing Plans?**

Healthcare sharing plans are alternatives offered to those of Christian faith to help alleviate the cost and expenses of medical bills. Medical Sharing facilitates the cost sharing for families and individuals on these unique plans. These plans are ACA exempt and are generally much more affordable than the cost of traditional health insurance.

35.     The medishareplan.com website, unlike the medi-shareplans.com site, does not make any reference to SureCo, Inc. or any of the SureCo entities on its homepage.  However, deeper into the website is a Disclaimer page that includes a reference to a company called SureCare, Inc., and provides the same contact information as the other SureCo entities.

36.     SureCare was formed in September 2017 and is affiliated with the other SureCo companies.  SureCare has the same officers and directors as SureCo Insurance and SureCo Health, and as evidenced by its website has the same corporate office.

37.     SureCare is a for-profit entity and upon information and belief is not a ministry and has no formal or informal connection or relationship with any Christian denomination or the Christian faith in general.

38.     This new use on the medishareplan.com website, after being advised of Plaintiff's rights, by a company with the same officers and directors as those notified of Plaintiff's rights, constitutes willful acts of trademark infringement, unfair competition, and false advertising.

39.     The www.medishareplan.com website is currently still active and being used in commerce throughout the United States.

40.     To date, Plaintiff has continued to receive calls and additional information from customers and potential customers further demonstrating the confusion and damage being caused by Defendants unauthorized use of the MEDI-SHARE® mark and other wrongful conduct.  By way of example, over the last the three month period leading up to the filing of this Complaint, CCM has been made aware of a number of instances of such behavior, including:.

a. Calls from potential customers residing in multiple states, including Florida, who went online to purchase MEDI-SHARE® after being referred by a current customer, but instead found one of Defendants' websites and mistakenly signed-up for a plan offered by one of the Defendants.

b. A call from a prospective customer who heard a radio advertisement for MEDI-SHARE® and subsequently went online to apply for membership through a website he believed to be MEDI-SHARE®, only to later discover that he had unintentionally joined a plan offered by one of the Defendants.

c. A call from a prospective customer who believed he had purchased MEDI-SHARE®, only to learn after receiving his membership cards that he had purchased a plan from one of the Defendants.  He indicated he was so upset with the deception that he was now hesitant to join any healthcare sharing ministry, including MEDI-SHARE®.

d. A follow-up call from a prospective customer inquiring about his pending MEDI-SHARE® application, but upon checking its records CCM could find no record of this person's application.  During the call it was discovered that the potential customer had previously been talking with a representative from one of the Defendants and had submitted an application to one of the Defendants, not MEDI-SHARE®.

e. During a follow up call from a prospective customer who had previously submitted an inquiry via the MEDI-SHARE® website, the prospective customer responded that he had previously spoken with an agent claiming to be a MEDI-SHARE® agent, however the agent actually worked with one of the Defendants.

f. A potential customer called saying that his wife recently joined MEDI-SHARE® and that he would like to join as well, but CCM had no record of his wife joining MEDI-SHARE®.  Upon further inquiry it was discovered that the potential customer's wife had signed up with a plan with one of the Defendants, not CCM.

41.    Plaintiff has been and continues to be harmed by Defendants' improper and unlawful use of Plaintiff's name, trademarks, and goodwill.

### III.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Federal Trademark Infringement – against SureCo Health and SureCare)**

42.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1, 3-4, 7-8, 10-20, 22-41.

43.     The Federal Lanham Trademark Act of 1946, 15 U.S.C. § 1114(a), prohibits the use of any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with such use that is likely to cause confusion, mistake, or to deceive.

44.     Plaintiff has established an enforceable and protectable trademark in MEDI-SHARE®.  Consumers would associate the phrase MEDI-SHARE® with CCM and not with any other company providing similar healthcare sharing services in markets throughout the United States.

45.     SureCo Health and SureCare have never had any right, authority, or permission to use Plaintiff's registered trademark in connection with selling or providing healthcare sharing plans, including healthcare sharing plans marketed to members of the Christian faith.

46.     SureCo Health and SureCare have violated 15 U.S.C. § 1114 by infringing the trademark owned and used by CCM in interstate commerce through various acts, including by marketing and offering health sharing plan services and products using confusingly similar and nearly identical names, logos, and domain names.  SureCo Health's and SureCare's use of Plaintiff's trademark is without permission and is likely to cause confusion, to cause mistake, and to deceive.

47.     As exhibited by, among other things, SureCo Health's and SureCare's use of multiple companies, multiple domain names, and multiple variations on the phrase Medi-share, Defendants' acts of infringement have been committed with the intent to cause confusion, mistake, to deceive, and to take the business of Plaintiff.

48.     As a result of SureCo Health's and SureCare's willful and intentional infringement of Plaintiff's trademark, Plaintiff is entitled to recover: (1) SureCo Health's and SureCare's profits;

(2) Plaintiff's actual damages; and (3) Plaintiff's attorney's fees and costs incurred herein, which relief Plaintiff requests.

## SECOND CLAIM FOR RELIEF
### (Contributory Trademark Infringement – against SureCo Insurance and John Does 1 - 10)

49.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-41.

50.     The 11th Circuit has acknowledged and adopted the separate claim of contributory trademark infringement, which requires "both an allegation of a direct infringement claim by a third party, and an allegation of an intentional or knowing contribution to that infringement by the defendant."  *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1245 (11th Cir. 2007).  The 11th Circuit has also noted "that contributory trademark infringement is typically alleged as a separate count."  *Id.* at 1246.

51.     As alleged above, SureCo Health and SureCare willfully and intentionally infringed the Plaintiff's registered trademark MEDI-SHARE®.  *See supra* paragraphs 42-48.

52.     At all relevant times, SureCo Insurance and John Does 1-10 had the authority and ability to prevent SureCo Health and SureCare from using Plaintiff's trademark.

53.     At all relevant times, SureCo Insurance and John Does 1-10 had actual knowledge that SureCo Health and SureCare were unlawfully using Plaintiff's trademark in connection with marketing and offering health sharing plan services throughout the United States.  However, despite this knowledge SureCo Insurance and John Does 1-10 failed to make reasonable efforts to stop the infringement of Plaintiff's trademark.

54.     Additionally, SureCo Insurance and John Does 1-10 knowingly facilitated the infringement of Plaintiff's trademark for their own financial gain.

55.     As a result of SureCo Insurance and John Does 1-10's intentional efforts to assist and facilitate infringement of Plaintiff's trademark, Defendants are jointly and severally liable for the damages caused by Defendants' infringement in an amount to be established at trial.

**THIRD CLAIM FOR RELIEF**
**(Unfair Competition Under 15 U.S.C. § 1125(a)(1)(A) and (B) – against SureCo Health and SureCare)**

56.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1, 3-4, 7-8, 10-20, 22-41.

57.     The Federal Lanham Trademark Act of 1946, 15 U.S.C. § 1125(a)(1)(A) and (B), prohibits the use of any word, term, name, symbol, device, or any combination thereof (regardless of whether it has been registered with the USPTO), or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact that (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities of another person, or (B) is used in commercial advertising or promotion that misrepresent the nature, characteristics, qualities of the goods, services, or commercial activities.

58.     Plaintiff markets and provides health sharing plans to members of the Christian faith.

59.     SureCo Health and SureCare do not have the right, authority, or permission to use Plaintiff's name, marks, or symbols in connection with marketing and providing health sharing plans to members of the Christian faith.

60.     SureCo Health's and SureCare's use of Plaintiff's name, mark, symbols in connection with marketing and providing health sharing plans to members of the Christian faith is likely to cause confusion, cause mistake, and to deceive as to Defendants' affiliation, connection,

and association with Plaintiff, and is likely to cause confusion regarding Plaintiff's sponsorship or approval of Defendants' health sharing plans.

61.     SureCo Health's and SureCare's use of the Plaintiff's name, marks, and symbols, along with their false or misleading descriptions and representations are a  violation of 15 U.S.C. § 1125(a)(1)(A).

62.     SureCo Health's and SureCare's use of Plaintiff's name, marks, and symbols to market and advertise their health sharing plans is deceptively misdescriptive and/or false.

63.     SureCo Health's and SureCare's use of the Plaintiff's name, marks, and symbols constitutes false and/or misleading representations of fact.  SureCo Health's and SureCare's aforementioned activities constitute false and/or misleading advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

64.     SureCo Health's and SureCare's aforementioned actions and activities have been committed willfully with the intent to damage Plaintiff and divert business from Plaintiff, and have caused and will continue to cause damage to Plaintiff until such time as it is permanently enjoined by this Court.

<u>**FOURTH CLAIM FOR RELIEF**</u>
**(Contributory Unfair Competition Under 15 U.S.C. § 1125(a)(1)(A) and (B) –**
**against SureCo Insurance and John Does 1 - 10)**

65.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-41.

66.     The 11th Circuit has acknowledged and adopted the separate claim of contributory unfair competition under 15 U.S.C. § 1125(a), which requires both a showing that a third party directly engaged in unfair competition under section 1125(a) and that the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it.  *Duty Free Americans, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1274-77 (11th Cir. 2015).

67.     As alleged above, SureCo Health and SureCare engaged in acts of unfair competition in violation of 15 U.S.C. § 1125(a).  *See supra* paragraphs 56-64.

68.     At all relevant times, SureCo Insurance and John Does 1-10 were aware that SureCo Health and SureCare were unlawfully using Plaintiff's name, marks, and symbols in connection with marketing and offering health sharing plan services throughout the United States.

69.     At all relevant times, SureCo Insurance and John Does 1 – 10 knew and were aware that SureCo Health and SureCare did not have authority or the right to use the Plaintiff's name, marks, and symbols in connection with marketing and offering health sharing plan services.

70.     At all relevant times, SureCo Insurance and John Does 1 – 10 had the authority and ability to ensure that SureCo Health and SureCare were not engaging in false or misleading advertising by using the Plaintiff's name, marks, and symbols in connection with marketing and offering health sharing plan services.

71.     At all relevant times, SureCo Insurance and John Does 1 – 10 had actual knowledge that SureCo Health and SureCare were, and still are, using the Plaintiff's name, marks, and symbols in connection with marketing and offering health sharing plan services.  However, despite this knowledge, SureCo Insurance and John Does 1 – 10 failed to make reasonable efforts to stop Defendants' false, misleading, and improper use of the Plaintiff's name, marks, and symbols.

72.     As a result of SureCo Insurance's and John Does 1 – 10's intentional efforts to assist and facilitate SureCo Health's and SureCare' violation of 15 U.S.C. § 1125(a)(1)(A) and (B), SureCo Insurance and John Does 1 – 10 are jointly and severally liable for the damages caused by Defendants' acts of unfair competition, in an amount to be established at trial.

## FIFTH CLAIM FOR RELIEF
### (Violation of Florida's Deceptive and Unfair Trade Practices Act (FLA. STAT. §§ 501.201-501.213 ["FDUTPA']))

73.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-41.

74.     Chapter 501, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act is to be liberally construed to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

75.     Plaintiff is an "interested party or person" within the meaning of Fla. Stat. § 501.203(6).

76.     Each of the Defendants have engaged in trade and commerce within the meaning of Fla. Stat. §501.203(8).

77.     While FDUTPA does not define "deceptive" and "unfair" it incorporates by reference the Federal Trade Commission's interpretation of these terms.  The FTC has found that a "deceptive act or practice" encompasses "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances to the consumer's detriment."

78.     The FDUTPA provides that "anyone aggrieved by a violation of" the FDUTPA may bring an action for injunctive relief and/or actual damages resulting from a violation of the FDUTPA.  Fla. Stat. §501.211(1) and (2).

79.     Defendants have, among other things, knowingly and intentionally, used Plaintiff's name, mark, symbols, reputation, and goodwill in connection with marketing and providing health sharing plans to members of the Christian faith as part of an effort to cause confusion, cause mistake, and to deceive a reasonable person under the circumstances as to Defendants' affiliation, connection, and association with Plaintiff.

80.     As a result of Defendants' deceptive trade practices, potential customers of Plaintiff's have been and continue to be deceived about Defendants' connection and affiliation with Plaintiff's MEDI-SHARE® program.

81.     At all relevant times, Defendants were on notice that their false, misleading, and confusing representations of material facts as described above were being communicated to prospective customers of Plaintiff, both in Florida and throughout the United States, through public solicitation on Defendants' websites and through direct phone, email, and mail solicitations.

82.     As a result of Defendants' violations of the FDUTPA, Plaintiff has been damaged by, among other things, lost or misdirected customers and damage to its reputation and goodwill, in an amount to be proven at trial.  Pursuant to §§ 501.211(1) and 510.2105, Fla. Stat., Plaintiff is also entitled to recover from Defendants the reasonable amount of attorney's fees Plaintiff has incurred in representing its interests in this matter.

## IV.  DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

A.     On its First Claim for Relief, judgment against SureCo Health and SureCare for trademark infringement and an award of damages to Plaintiff in an amount to be proven at trial;

B.     On its Second Claim for Relief, judgment against SureCo Insurance and John Does 1 – 10 for contributory trademark infringement and an award of damages to Plaintiff in an amount to be proven at trial;

C.     On its Third Claim for Relief, judgment against SureCo Health and SureCare for its actions violating 15 U.S.C. § 1125(a)(1)(A) and (B), and an award of damages to Plaintiff in an amount to be proven at trial;

D.     On its Fourth Claim for Relief, judgment against SureCo Insurance and John Does 1 – 10 for their knowing and intentional actions that contributed to Defendants' violations of 15 U.S.C. § 1125(a)(1)(A) and (B), and an award of damages to Plaintiff in an amount to be proven at trial;

E.      On its Fifth Claim for Relief, judgement against Defendants for their violations of the FDUTPA, and an award of damages to Plaintiff in an amount to be proven at trial;

F.      Entry of a permanent injunction precluding all Defendants, and their officers, directors, agents, representatives, brokers, broker associates, servants, employees, and those acting in concert with them, from:

      a.   Using or infringing the MEDI-SHARE® mark or any mark confusingly similar thereto, including use as a domain name;

      b.   Engaging in any false and/or misleading advertising that misrepresents the Defendants' affiliation with Plaintiff;

      c.   Engaging in any acts of unfair competition against Plaintiff;

G.      As to all Claims for Relief, for attorney's fees and costs, expert witness fees, pre-judgment and post-judgment interest (including, but not limited to, moratory interest) as allowed by law, and for such further relief as the Court deems just and proper.

## V. **JURY DEMAND**

Plaintiff demands a jury trial on all claims triable to a jury.

Dated:  August 20, 2018

           Respectfully submitted,

           Lori T. Milvain, Esq.
           Florida Bar No. 0116660
           Trial Counsel
           Joshua Grosshans, Esq.
           Florida Bar No. 35828
           Latham, Shuker, Eden & Beaudine, LLP
           111 N. Magnolia Ave., Suite 1400
           Orlando, FL 32801
           407-481-5800
           407-481-5801 (fax)

josh@lseblaw.com
lmilvain@lseblaw.com
Attorneys for Plaintiff